**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| NAOMI MCGHEE, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CERNER CORPORATION D/B/A ORACLE HEALTH, BOARD OF TRUSTEES OF NORTH KANSAS CITY HOSPITAL, and MERITAS HEALTH CORPORATION,<br><br>Defendants. | CIVIL ACTION<br><br>CASE NO.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>*Electronically Filed* |

## CLASS ACTION COMPLAINT

Naomi McGhee, on behalf of herself and all similarly situated persons, alleges the following against Cerner Corporation d/b/a Oracle Health ("Oracle Health" or "Oracle"), Board of Trustees North Kansas City Hospital ("NKC Hospital"), and Meritas Health Corporation ("Meritas") (collectively, "Defendants"),[1] and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff makes these allegations based upon personal knowledge of the facts pertaining to Plaintiff and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

## NATURE OF THE ACTION

1. This class action arises from Defendants' failure to protect highly sensitive data.

2. Oracle Health, formerly Cerner Corporation, is the second-largest electronic health

[1] *North Kansas City Hospital and Meritas Health are now NKC Health*, June 12, 2025, https://www.nkchealth.org/news-and-media/north-kansas-city-hospital-and-meritas-health-are-now-nkc-health.

record ("EHR") vendor in the United States, holding about 22% of the U.S. EHR industry.[2] Oracle Health should have industry-leading data security systems in place. Oracle Health acknowledges that it "has been trusted with some of the world's most sensitive and regulated data" and understands that it has a legal duty to safeguard that data from unauthorized access and disclosure.[3] But Oracle Health failed to meet its duty, leading to a massive data breach in January 2025 that compromised the extremely sensitive financial and medical information entrusted to it by patients and their healthcare providers (the "Data Breach").

3. Defendant Cerner Corporation d/b/a Oracle Health is an electronic medical record vendor with its principal place of business in Kansas City, Missouri. It contracted with North Kansas City Hospital d/b/a NKC Health as its EHR vendor.

4. Plaintiff Naomi McGhee received care from NKC Health before the Data Breach.

5. In a letter dated November 25, 2025, NKC Health notified Plaintiff that it "recently learned that an unauthorized third party gained access to and obtained data that was maintained by an electronic medical record vendor, Cerner. Cerner has determined through an investigation that at least **as early as January 22, 2025**, an unauthorized third party gained access to personal health information on Cerner systems." (emphasis added). But that "Cerner later informed [NKC Health] that law enforcement investigators directed a delay in notifying patients, as well as additional hospital customers, about this incident because it could have impeded their investigation."[4]

---

[2] Tyler Smith, Who are the largest EHR vendors?, Oct. 31, 2025, https://www.ehrinpractice.com/largest-ehr-vendors.html#:~:text=Hospital%20EHRs&text=Based%20on%20data%20from%20the,Meditech:%2013.2%25.

[3] Seema Verma, Oracle Acquires Cerner to Form Oracle Health: The Future of Healthcare, Oracle, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Jan. 28, 2026).

[4] *See also* Notice of Cerner Cyber Security Event, Nov. 25, 2025, https://www.nkchealth.org/news-and-media/notice-cerner-cyber-security-event.

6. According to the same letter, on "September 26, 2025, Cerner advised [NKC Health] that the personal information involved in this incident may have included [Plaintiff's] name, date of birth, and Cerner patient identifier. It may also have included information within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment, although Cerner has not been able to confirm if this type of information was affected specifically relating to you. **Cerner does not believe that your Social Security Number is involved in this incident.**" (emphasis in original).

7. Defendants store a litany of highly sensitive personally identifiable information ("PII") and protected health information ("PHI")—together "Private Information"—about their current and former patients. But Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in the Data Breach.

8. The types of information exposed in the Data Breach include such Private Information.

9. It is unknown for precisely how long the cybercriminals had access to Defendants' network and information stored before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to current and former patients' Private Information.

10. On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendants' failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

11. Plaintiff is a Data Breach victim. She brings this class action on behalf of herself,

and all others harmed by Defendants' misconduct.

12. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Defendants' current and former patients' Private Information was exactly that—private. Now their Private Information is forever exposed and unsecured.

## PARTIES

13. Plaintiff Naomi McGhee is a natural person and a citizen of Missouri. She is domiciled in Missouri.

14. Defendant Cerner Corporation d/b/a Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.[5]

15. Defendant Board of Trustees of North Kansas City Hospital is the governing body of North Kansas City Hospital. The Board was established pursuant to Chapter 96, RSMo, to operate, maintain, and manage North Kansas City Hospital. The Board is not a public entity.

16. Defendant Meritas Health Corporation, a subsidiary of North Kansas City Hospital, is a Missouri non-profit corporation with its principal place of business in North Kansas City, Missouri at 2800 Clay Edwards Dr., North Kansas City, MO 64116.

17. Defendants North Kansas City Hospital and Meritas Health Corporation operate under NKC Health as a "unified health system."[6]

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the proposed Class are

---

[5] *Oracle Acquires Cerner to Form Oracle Health; The Future of Healthcare*, ORACLE, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Nov. 6, 2025).

[6] *North Kansas City Hospital and Meritas Health are now NKC Health*, June 12, 2025, https://www.nkchealth.org/news-and-media/north-kansas-city-hospital-and-meritas-health-are-now-nkc-health.

citizens of a state different from at least one Defendant,[7] the proposed Class consists of more than 100 members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

19. This Court has personal jurisdiction over Defendants because Oracle, NKC Health, and Meritas have their principal place of business in this District.

20. Venue is proper in this Court because Defendants have their principal place of business in this District and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### *Defendants Collected and Stored the personal information of Plaintiff and the Class*

21. NKC Health is a healthcare system based in Missouri.

22. NKC Health uses Oracle Health (previously Cerner Corporation) which is a third-party electronic health records vendor used by many healthcare providers.

23. As part of their business, Defendants receive and maintain the Private Information of thousands of their current and former patients.

24. In collecting and maintaining Private Information, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law.

25. Under state and federal law, businesses like Defendants have duties to protect their current and former patients' Private Information and to notify them about breaches.

### *Defendants' Data Breach*

26. According to the letter notifying Plaintiff of the Data Breach, Oracle Health informed NKC Health that it experienced a cybersecurity event involving unauthorized access to

---

[7] *See* 28 U.S.C. § 1332(d)(10) (stating that for purposes of CAFA jurisdiction, an unincorporated association is deemed to be citizen of State where it has its principal place of business and under whose laws it is organized).

NKC Health's patient information contained on Oracle Health's systems.

27. On September 26, 2025, Oracle Health informed NKC Health that Plaintiff's Private Information may have been compromised.

28. The types of Private Information exposed included "name, date of birth, and Cerner patient identifier. It may also have included information within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment."

29. Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred members—as it includes NKC Health's current and former patients.

30. And yet, Defendants waited until November 25, 2025, before it began notifying the class—more than 300 days after the Data Breach—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

31. When Defendants did notify Plaintiff and the Class of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, providing Plaintiff with additional information about how to protect herself.

32. Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing Private Information. And thus, Defendants caused widespread injury and monetary damages.

33. Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendants inflicted

upon them, including their present and ongoing risk of identity theft and fraud arising from the Data Breach.

34. Because of Defendants' Data Breach, the sensitive Private Information of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

35. Plaintiff Naomi McGhee was a patient of NKC Health. As a result, Defendants obtained and maintained Plaintiff's Private Information.

36. As a result, Plaintiff was injured by Defendants' Data Breach.

***Plaintiff Naomi McGhee, on behalf of the Oracle Health Nationwide Class, the NKC Healthcare Provider Nationwide Subclass, and the Missouri State Subclasses***

37. Plaintiff Naomi McGhee received care from NKC Health, one of Oracle's healthcare provider clients, and received treatment prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number and medical information, in connection with Oracle's services contracted by her healthcare provider.

38. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and she chooses unique usernames for her passwords and online accounts.

39. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

40. Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

41. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

42. Plaintiff received a Data Breach Notice on or around November 25, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

43. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

44. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

45. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by an increase in spam phone calls and mail using her Private Information that she has received since the Data Breach, specifically related to her health conditions.

46. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

47. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

48. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed. She is also worried about the impact on her family's ability to manage her finances in the case that she becomes unable to.

49. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Consumers Prioritize Data Security***

50. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[8] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a

[8] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited Jan. 28, 2026).

customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[9]

b. 89% of consumers stated that "I care about data privacy."[10]

c. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[11]

d. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[12]

e. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[13]

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

51. Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of loss of the opportunity to control how their Private Information is used;

b. diminution in value of their Private Information;

c. compromise and continuing publication of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout

---

[9] *Id.* at 3.
[10] *Id.* at 9.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 11.

of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen Private Information; and

h. continued risk to their Private Information—which remains in Defendants' possession—and is thus as risk for futures breaches so long as Defendants fails to take appropriate measures to protect the Private Information.

52. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up thousands depending on the type of information obtained.[14]

53. The value of Plaintiff and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

54. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

55. One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen Private Information, and second, unregulated data

---

[14] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, EXPERIAN, June 30, 2025, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/#:~:text=Quick%20Answer,Price%20Index%20by%20Privacy%20Affairs.

found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

56. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

57. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other class members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

58. Defendants disclosed the Private Information of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Private Information of Plaintiff and Class membersto people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

59. Defendants' failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and class members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

60. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

61. In 2024, a record 3,158 data breaches occurred—resulting in 1,350,835,988 victim notices (i.e., 211% increase year-over-year).[15]

62. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[16]

63. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[17]

64. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendant.

65. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

66. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices

---

[15] *2024 data breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited Jan. 29, 2026)

[16] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[17] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

businesses must use.[18] The FTC declared that, *inter alia*, businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of Private Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

67. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

68. Furthermore, the FTC explains that companies must:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

69. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[18] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

70. In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

71. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

72. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

73. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-02) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

74. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

### *Defendants Violated HIPAA*

75. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly transactions and code sets to maintain the privacy and security of protected health information.[19]

76. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information and PHI is properly maintained.[20]

77. The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a. failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

---

[19] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[20] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

e. failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

78. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

## **CLASS ACTION ALLEGATIONS**

79. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure.

80. The classes that Plaintiff seeks to represent are defined as follows:

**Oracle Health Nationwide Class:**
All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach,

which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**<u>Oracle Health Missouri Subclass:</u>**
All individuals residing in Missouri identified whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**<u>NKC Health Defendant Nationwide Subclass:</u>**
All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by NKC Health, including all those individuals who receive notice of the Data Breach.

**<u>NKC Health Defendant Missouri State Subclass:</u>**
All individuals residing in Missouri identified in the applicable Count whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by NKC Health, including all those individuals who receive notice of the Data Breach.

81. Collectively, the Class and Subclasses are referred to as the "Classes" or "Class members."

82. Excluded from the Classes are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

83. Plaintiff reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

84. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

85. <u>Numerosity.</u> The Class members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class members through

this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class members are ascertainable through Oracle Health's and its customers' records, including but not limited to, the files implicated in the Data Breach.

86. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendants engaged in the conduct alleged herein;

b. When Defendants learned of the Data Breach;

c. Whether Defendants' response to the Data Breach was adequate;

d. Whether Defendants unlawfully lost or disclosed Plaintiff's and Class members' Private Information;

e. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Defendants owed a duty to Plaintiff and Class members to safeguard their Private Information;

i. Whether Defendants breached their duty to Plaintiff and Class members to safeguard their Private Information;

j. Whether criminals obtained Plaintiff's and Class members' Private Information via

the Data Breach;

k. Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class members;

l. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

m. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class members suffered as a result of Defendants' misconduct;

o. Whether Defendants' conduct was negligent;

p. Whether Defendants' conduct was per se negligent;

q. Whether either Defendant was unjustly enriched;

r. Whether Plaintiff and Class members are entitled to actual and/or statutory damages;

s. Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

87. Typicality. Plaintiff's claims are typical of those of other Class members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Defendants. Plaintiff is

advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to the named Plaintiff. The claims of the named Plaintiff and those of Class members arise from the same operative facts and are based on the same legal theories.

88. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff's counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

89. Predominance. Defendants have engaged in a common course of conduct toward Plaintiff and Class members, in that Plaintiff's and Class members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

90. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each

Class member.

91. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class members affected by the Data Breach.

## CLAIMS FOR RELIEF

### Count I – Negligence
### (On Behalf of Plaintiff and the Classes)

92. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

93. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

94. Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

95. Defendants knew or should have known of the risks inherent in collecting Plaintiff's and Class members' Private Information and the importance of adequate security. Defendants were on notice because they knew or should have known that they are attractive targets for cyberattacks seeking healthcare-related data and other Private Information.

96. Defendants owed a non-delegable duty of care to Plaintiff and Class members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

b. To protect their patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

d. To employ reasonable security measures and to otherwise protect the Private Information of Plaintiff and Class members pursuant to federal and state regulations including but not limited to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

97. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

98. Defendants' duty also arose because, as health service providers, Defendants were bound by industry standards to protect their patients' confidential Private Information.

99. Defendants hold themselves out as trusted data collectors, and thereby assume a

duty to reasonably protect patients' information. Indeed, Defendants, as data collectors, were in a unique and superior position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

100. Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

101. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' Private Information within Defendants' possession.

102. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Plaintiff's and Class members' Private Information.

103. Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

104. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class members' Private Information;

e. Failing to comply with the FTCA; and

f. Failing to detect in a timely manner that Class members' Private Information had been compromised.

105. Defendants had a special relationship with Plaintiffs and Class members. Plaintiff's and Class members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions.

106. Defendants' breach of duties owed to Plaintiff and Class members caused Plaintiff's and Class members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

107. As a result of Defendants' ongoing failure to notify Plaintiff and Class members regarding exactly what Private Information has been compromised, Plaintiff and Class members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

108. Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiff and Class members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

109. As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class members, Plaintiff and Class members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

110. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class members have suffered damages as alleged herein and are at imminent risk of further harm.

111. The injury and harm that Plaintiff and Class members suffered was reasonably

foreseeable.

112. Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

113. In addition to monetary relief, Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**Count II – Negligence *per se***
**(On Behalf of Plaintiffs and the Classes)**

114. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

115. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

116. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

117. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it.

The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff's and the Class members' sensitive Private Information.

118. Defendants breached their respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

119. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

120. The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class members.

121. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class members from a data breach.

122. Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to

protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

123. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

124. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class members would not have been injured.

125. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that the breach would cause Plaintiff and Class members to suffer the foreseeable harms associated with the exposure of their Private Information. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

126. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**Count III – Breach of Third-Party Beneficiary Contract**
**(On Behalf of Plaintiffs and the Classes)**

127. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the

applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

128. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

129. Upon information and belief, Oracle Health entered into valid contracts with its clients, including the Healthcare Provider Defendants, to provide software products and/or services, including business associate agreements under HIPAA, which included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to Oracle Health.

130. Such contracts were made expressly for the benefit of Plaintiff and the Classes, as it was their Private Information that Defendants agreed to receive and protect through their services.

131. The benefit of collection and protection of the Private Information belonging to Plaintiff and the Classes was the direct and primary objective of the contracting parties, and Plaintiff and the Class members were direct and express beneficiaries of such contracts.

132. Plaintiff and the Classes are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

133. Defendants knew that if they were to breach these contracts, healthcare patients, including Plaintiff and the Classes, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

134. Defendants breached their contracts when they failed to use reasonable data security measures and/or business associate monitoring measures and allowed the Data Breach to occur.

135. As foreseen, Plaintiff and the Classes were harmed by Defendants' failure to use reasonable data security measures to securely store and protect the files in their care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information. Accordingly, Plaintiff and the Classes are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

**Count IV – Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Classes)**

136. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

137. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

138. Defendants provide healthcare-related services to Plaintiff and Class members. Plaintiff and Class members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiff and Class members paying for services from Defendants (or having their insurance companies pay Defendants on their behalf).

139. Through Defendants' sale of medical services, they knew or should have known that they must protect Plaintiff's and Class members' confidential Private Information in accordance with Defendants' policies, practices, and applicable law.

140. As consideration, Plaintiff and Class members paid money (or money was paid on their behalf) to Defendants and turned over valuable Private Information to Defendants. Accordingly, Plaintiffs and Class members bargained with Defendants to securely maintain and store their Private Information.

141. Defendants solicited, offered, and invited Plaintiff and Class members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class members accepted Defendants' offers and provided their Private Information to doctors or other healthcare professionals who then provided it to Oracle Health.

142. Defendants accepted possession of Plaintiff's and Class members' Private Information for the purpose of providing healthcare-related services to Plaintiff and Class members.

143. In delivering their Private Information to Defendants and paying for healthcare services, Plaintiff and Class members intended and understood that Defendants would adequately safeguard Private Information as part of that service.

144. Defendants' implied promises to Plaintiff and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information

against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

145. Plaintiff and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

146. Had Defendants disclosed to Plaintiff and the Classes that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the Class members would not have provided their Private Information to Defendants.

147. As providers of healthcare-related services, Defendants recognized (or should have recognized) that Plaintiff's and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class members.

148. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class members' Private Information. Defendants further breached these implied contracts by failing to comply with their promise to abide by HIPAA.

149. Additionally, Defendants breached the implied contracts with Plaintiff and Class members by failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and transmitted, in violation of 45 CFR § 164.306(a)(1).

150. Defendants also breached the implied contracts with Plaintiff and Class members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted

access rights, in violation of 45 CFR § 164.312(a)(1).

151. Defendants further breached the implied contracts with Plaintiff and Class members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR § 164.308(a)(1).

152. Defendants further breached the implied contracts with Plaintiff and Class members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii).

153. Defendants further breached the implied contracts with Plaintiff and the Class members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR § 164.306(a)(2).

154. Defendants further breached the implied contracts with Plaintiff and the Class members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding PII, in violation of 45 CFR § 164.306(a)(3).

155. Defendants further breached the implied contracts with Plaintiff and the Class members by failing to ensure compliance with the HIPAA security standard rules by their workforce, in violation of 45 CFR § 164.306(a)(4).

156. Defendants further breached the implied contracts with Plaintiff and the Class members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq.*

157. Defendants further breached the implied contracts with Plaintiff and the Class members by failing to design, implement, and enforce policies and procedures establishing

physical administrative safeguards to reasonably safeguard PHI, in violation of 45 CFR § 164.530(c).

158. Defendants further breached the implied contracts with Plaintiff and the Class members by otherwise failing to safeguard Plaintiff's and Class members' Private Information.

159. A meeting of the minds occurred, as Plaintiff and the Class members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendants in exchange for Defendants' agreement to, *inter alia*, protect their Private Information.

160. Plaintiff and the Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**Count V – Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

161. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

162. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

163. Plaintiff and the Class members conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for medical services (or having their insurance companies pay for medical services) that should have included cybersecurity protection

to protect their Private Information. Plaintiffs and the Class members did not receive such protection.

164. Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including from payments made to it by Plaintiff and the Class members (or on their behalf).

165. As such, a portion of the payments made by Plaintiff and the Class members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

166. Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received from Plaintiffs and the Class members that should have been used for adequate cybersecurity practices that they failed to provide.

167. Defendants knew that Plaintiff and the Class members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiff and the Class members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and the Class members' Private Information and prevented the Data Breach.

168. If Plaintiff and the Class members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

169. Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

170. As a direct and proximate result of Defendants' conduct, Plaintiff and Class

members have suffered and are at a continual, substantial, imminent risk of injury, as alleged herein.

171. Plaintiff and the Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class members may seek restitution or compensation.

172. Plaintiff and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**Count VI – Breach of Confidence**
**(On Behalf of Plaintiffs and the Classes)**

173. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

174. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

175. Plaintiff and the Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendants and ultimately accessed and acquired in the Data Breach.

176. As healthcare service providers, Defendants have a special relationship with their patients, including Plaintiff and Class members. Because of that special relationship, Defendants were provided with and stored Plaintiff's and Class members' Private Information and had a duty to maintain such Information in confidence.

177. Patients like Plaintiff and Class members have a privacy interest in personal medical and other matters, and Defendants had a duty not to disclose such matters concerning their patients.

178. As a result of the parties' relationship, Defendants had possession and knowledge of highly sensitive and confidential Private Information belonging to Plaintiff and the Class members, information that was not generally known.

179. Plaintiff and the Class members did not consent nor authorize Defendants to release or disclose their Private Information to an unknown criminal actor.

180. Defendants breached their duty of confidence owed to Plaintiff and the Class members by, among other things: (a) mismanaging their computer systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiff's and Class members' Private Information; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the Data Breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their patients; and (h) making

an unauthorized and unjustified disclosure and release of Plaintiff's and Class members' Private Information to a criminal third party.

181. But for Defendants' wrongful breach of their duty of confidence owed to Plaintiff and Class members, their Private Information would not have been compromised.

182. As a direct and proximate result of Defendants' wrongful breach of their duty of confidence, Plaintiff and the Class members have suffered and will continue to suffer the injuries and damages alleged herein.

183. It would be inequitable for Defendants to retain the benefit of controlling and maintaining Plaintiff's and Class members' Private Information at the expense of Plaintiff and the Class members.

184. Plaintiff and the Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**Count VII – Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Classes)**

185. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

186. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

187. In providing their Private Information to Defendants, Plaintiff and the Class members justifiably placed a special confidence in Defendants to act in good faith and with due regard for the interests of Plaintiff and the Class members to safeguard and keep confidential that Private Information.

188. As healthcare service providers, Defendants have a fiduciary relationship to their clients, like Plaintiff and Class members.

189. Because of that fiduciary relationship, Defendants were provided with and stored valuable and sensitive Private Information belonging to Plaintiff and Class members, which they were required to maintain in confidence.

190. Defendants accepted the special confidence that Plaintiff and Class members placed in it.

191. In light of the special relationship between Defendants, and Plaintiff and Class members, whereby Defendants became guardians of Plaintiff and Class members' Private Information, Defendants became fiduciaries by their undertaking and guardianship of the Private Information, to act primarily for the benefit of their customers, including Plaintiff and Class members for the safeguarding of Plaintiff's and Class members' Private Information.

192. Defendants have a fiduciary duty to act for the benefit of Plaintiff and the Class members upon matters within the scope of their customer relationships, in particular, to keep secure the Private Information of their customers, exercise utmost care in protecting the Private Information in their possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons, and to timely notify Plaintiff and the Class members of a data breach and disclosure.

193. Plaintiff and Class members have a privacy interest in their Private Information.

194. Defendants breached their fiduciary duties to Plaintiff and Class members by failing to protect the integrity of the systems containing Plaintiff's and Class members' Private Information.

195. Defendants breached their fiduciary duties to Plaintiff and Class members by otherwise failing to safeguard Plaintiff and Class members' Private Information and by failing to timely notify and/or warn Plaintiff and Class members of the Data Breach.

196. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and the Class members have suffered and will suffer injuries and damages as alleged herein.

197. As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiff and the Class members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

**Count VIII – Invasion of Privacy**
**(On Behalf of Plaintiffs and the Classes)**

198. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

199. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

200. Plaintiff and the Class members had a reasonable expectation of privacy in the

Private Information Defendants mishandled.

201. As a result of Defendants' conduct, publicity was given to Plaintiff's and Class members' Private Information, which necessarily includes matters concerning their private life.

202. A reasonable person of ordinary sensibilities would consider the publication of Plaintiff's and the Class members' Private Information to be highly offensive.

203. Plaintiff's and the Class members' Private Information is not of legitimate public concern and should remain private.

204. As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiff and the Class members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

205. Plaintiff and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

206. Plaintiff and the Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate identity protection and credit monitoring services to all Class members.

**Count IX – Declaratory Judgment**
**(On Behalf of Plaintiffs and the Classes)**

207. This request for federal declaratory judgment is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider

Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

208. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

209. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

210. In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiff and the Class allege that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiff and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

211. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

b. Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendants breached, and continue to breach, their duties by failing to use reasonable measures to protect the data entrusted to them; and

d. Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiff and Class members.

212. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to them.

213. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

214. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff's and Class members' injuries.

215. If an injunction is not issued, the resulting hardship to Plaintiff and the Class members far exceeds the minimal hardship that Defendants could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

**Count X – Violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.***
**(On Behalf of Plaintiffs and the Classes)**

216. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or alternatively, (2) by Missouri Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Missouri Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against NKC Health, on behalf of the NKC Health Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against NKC Health, on behalf of the NKC Health Healthcare Provider Defendant Missouri Subclass.

217. Plaintiff restates the allegations in Paragraphs 1 through 91 above, as if fully set forth herein.

218. Mo. Rev. Stat. § 407.020 prohibits the use of any "deception, fraud, false pretense,

false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…"

219. An "unfair practice" is defined by Missouri law, Mo. Code Regs. Ann. tit. 15 § 60-8.020, as any practice which:

a. either-

i. offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

ii. is unethical, oppressive or unscrupulous;

b. and presents a risk of, or causes, substantial injury to consumers.

220. Mo. Code Regs. Ann. tit. 15 § 60-8.040 provides that an "Unfair Practice" includes for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

221. Plaintiff, a Missouri Subclass members, and Defendants are "persons" within the meaning of § 407.010(5).

222. Merchandise is defined by the MMPA, to include the providing of "services" and, therefore, encompasses healthcare services.

223. Efforts to maintain the privacy and confidentiality of medical records are part of the healthcare services associated with a good.

224. Maintenance of medical records are "merchandise" within the meaning of section 407.010(4).

225. Plaintiff's and the Subclass members' goods and services purchased from

Defendants were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

226. As set forth herein, Defendants' acts, practices and conduct violate section 407.010(1) in that, among other things, Defendants have used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services. Such acts offend the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute § 407.020(1).

227. Defendants' unfair, unlawful, and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; (3) failing to train personnel; and (4) charging patients for privacy services which were not provided.

228. Defendants' conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo Code Regs. Ann tit. 15 § 60-8.

229. As a direct result of Defendants' breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's confidential medical information, Plaintiff suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation, and loss of enjoyment of life.

230. As a direct and proximate cause of Defendants' unfair and deceptive acts, Plaintiff

and the Subclass members suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive. In this respect, Plaintiff and the Subclass members have not received the benefit of the bargain and have suffered an ascertainable loss.

231. Plaintiff and the Subclass members seek actual damages for all monies paid to Defendants in violation of the MMPA. In addition, Plaintiff and the Subclass members seek attorneys' fees, and all other relief that is just and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class members request judgment against Defendants and that the Court enter an order:

a. Certifying this action as a class action, defining the Classes as requested herein, appointing the undersigned as class counsel, and finding that Plaintiff are proper and adequate representatives of the Classes requested herein;

b. Awarding Plaintiff and Class members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c. Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. Instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class members;

e. Requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

f. Requiring Defendants to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g. Awarding Plaintiff and Class members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class members demand a trial by jury on all triable issues.

Dated: March 10, 2026

Respectfully submitted,

*/s/ Barrett J. Vahle*

Norman E. Siegel
Barrett J. Vahle
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson
WAGSTAFF & CARTMELL, LLP
4740 Grand Ave., Suite #300
Kansas City, MO 64112
(816) 701-1100
(816) 531-2372 (facsimile)
thudson@wcllp.com

Lynn A. Toops
Amina A. Thomas
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
(317) 636-2593 (facsimile)
ltoops@cohenmalad.com
athomas@cohenmalad.com

Thomas E. Loeser
COTCHETT, PITRE & McCARTHY LLP
1809 7th Ave., Ste. 1610
Seattle, WA 98101
(206) 802-1272
tloeser@cpmlegal.com

*Attorneys for Plaintiff and Proposed Classes*